# JOSÉ MARIA UBARRI

*v.*

# PABLO UBARRI.

---

Equity, No. 407.

A bill in equity charging fraud and seeking to follow the proceeds and
have a lien declared and foreclosed on real estate alleged to have been
purchased with the proceeds of other property fraudulently acquired
does not fall within the rule for substitute service on a nonresident de-
fendant, established by § 1 of the act of Congress of 1887, 1888.

Opinion filed June 29, 1907.

*Messrs. Henry F. Hord* and *Damian Monserrat,* solicitors for plaintiff.

*Mr. Francis H. Dexter,* solicitor for defendant.

RODEY, Judge, delivered the following opinion:

This cause is before us on a motion to dismiss for want of jurisdiction and on an objection to the attempted substitute process in the cause. Briefs have been filed by both parties. There were first two respondents, Pablo Ubarri and Rufino Ubarri. The cause was dismissed as to Rufino on the ground that he was a Porto Rican under his claim in that behalf, in a somewhat elaborate opinion we heretofore rendered in another cause. The bill was then amended and proceeded as to Pablo Ubarri, the remaining respondent. On an *ex parte* motion made by counsel for complainant, we heretofore issued an order for substitute service, and due publication was had and copies of the summons and the complaint mailed as provided by the statute. A warning notice was also ordered issued against the property of the said defendant to the registrar of property in this district. Copies of the summons and bill were sent to Barcelona, Spain, where the defendant resides, and one Stanley C. Harris, of the American consulate there, certified under oath and seal that at said place he personally offered to deliver to the respondent, Pablo Ubarri, in person, with whom he is acquainted, an exact certified copy of the bill of complaint, but that Ubarri positively refused to receive the same.

It is to be regretted that in a case like this, if the complainant really has a good cause of action,—upon which point we are not now passing,—where the court can see plainly that the respondent, Pablo Ubarri, is evading its process, and is probably

remaining in Spain for that purpose, and where we have every reason to know he has personal knowledge of everything this court is doing,—that still Congress seems to have left us powerless to obtain jurisdiction over him. We heretofore decided in a somewhat analogous case, No. 367 on the docket of this court, entitled Ortiz v. Alcaldá del Olmo [2 Porto Rico Fed. Rep. 95], that we have no jurisdiction to issue what are known as foreign attachments. We have again gone over the subject with a view to seeing if there is not some way by which we could modify our view and hold this man to be in court, and have examined all the authorities cited in vol. 4, pp. 391 et seq. of Federal Statutes Annotated, as well as those cited in the briefs of respective counsel.

The law permits a defendant in a court of the United States to be brought into court only when he is served with process in the district, except in cases such as this is claimed to be, where a suit is "commenced in any circuit court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any encumbrance or lien or cloud upon the title to, real or personal property within the district where such suit is brought" etc. [18 Stat. at L. 472, chap. 137, § 8, U. S. Comp. Stat. 1901, p. 513.] This is according to the judiciary act of March 3, 1875, and is a re-enactment and supersedes § 738, U. S. Rev. Stat., and is itself amended by the act of March 3, 1887, and as corrected by the act of August 13, 1888, of which latter act it is § 1.

Counsel for complainant draws an ingenious bill, attempting to make it possible for the court to get substitute process on this respondent. We have read the same carefully and have concluded that, if he has any right to recover at all, the proceeding is not a suit to enforce any legal or equitable lien such as is con-

Ubarri v. Ubarri.

templated by the statute referred to. Complainant alleges that the respondent, Pablo Ubarri, who is his brother, conspired with their father in 1893 and 1894, here in Porto Rico, during Spanish times, and defrauded this comp lainant out of, first, a large amount of his mother's estate, and then out of a large amount of the father's estate, after the latter's death.

He then alleges that this respondent, before leaving for Spain, sold all the property he inherited from said estates, that is, converted it all into cash, and then, forsooth, because he purchased other property here, or happens to own some other property here, which is but a small portion of his wealth, but not necessarily any part of the estates out of which this complainant is alleged to have been defrauded, that therefore the complainant is entitled to a lien on this other property, and that this brings the suit within the statute.

He first wants a hearing to induce the court to set aside a whole lot of procedure under Spanish law regarding the division of the estates; wants us to annul the alleged inventories and alleged wills, and to have his said brother first held to have defrauded him; and thereafter to have a long accounting to ascertain and fix the amount. Next, he desires to have the court declare that the amount to be thus found due is an equitable lien upon the property which his said brother happens to own in Porto Rico.

We do not think there is a case in the books—and we have examined all that have been cited to us, or that we could find in the Federal Statutes Annotated, supra—holding that such a case comes within the terms of the statute in question, "to enforce any legal or equitable lien upon or claim to any real or personal property within the district where such suit is brought." This seems too plain for argument.

### Ubarri v. Ubarri.

In our former opinion in Ortiz v. Alcalá del Olmo, 2 Porto Rico Fed. Rep. 95, we expressed grave doubt whether the Supreme Court of the United States had ever necessarily and squarely passed upon the question of the power of courts of the United States to issue foreign attachments, and we pointed out the dissent of Chief Justice Taney and several others of the then judges on this point in the leading case of Toland v. Sprague, 12 Pet. 300, 9 L. ed. 1903, which was tried as long ago as 1838; and we then ventured the suggestion that if a case was again squarely submitted to the Supreme Court of the United States, it might hold that courts of the United States have power to issue process in foreign attachment cases; but we further stated that the overwhelming weight of authority at circuit for the present, at least, is against the jurisdiction.

Unless counsel desires to take this case to the Supreme Court of the United States, which we hope he does, we cannot understand why he brings this suit and makes this effort to have us hold with him, for, knowing his ability as we do, we cannot believe that he seriously considers that the facts in this case bring it within the statute in question.

We are bound under the authorities, on the record here, to hold that we have no jurisdiction of this respondent, and the motion to quash the service and dismiss for want of jurisdiction with costs will therefore be granted, and it is so ordered.